UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| WILLIAM LANCE WALKER, | ) |   |
|---|---|---|
| Plaintiff, | ) |   |
| v. | ) | No. 2:14-CV-234-JRG-MCLC |
| GEORGIA CROWELL, | ) |   |
| Defendant. | ) |   |

## MEMORANDUM OPINION

This civil matter is before the Court on the motion to dismiss by defendant Georgia Crowell [Doc. 24]. Plaintiff has not filed a response in opposition to dismissal and the time for doing so has now passed. E.D. Tenn. L.R. 7.1, 7.2. For the reasons that follow, the Court will grant defendant's motion to dismiss.

**I. Factual Background[1]**

On April 4, 2013, plaintiff was transported from the Northeast Correctional Complex ("Northeast") to the emergency room at Johnson City Medical Center after complaining of poor vision in his left eye [Doc. 1 p. 4]. There, he was seen by the emergency room physician, who diagnosed him with a "slightly detached retina in the left

---

[1] For the purposes of the Motions to Dismiss, the Court takes plaintiff's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint" (citations omitted)).

eye" and recommended follow up with an ophthalmologist [*Id.*; Doc. 29 at 1].[2] The next day, plaintiff was taken to Johnson City Eye Clinic, where he was seen by Peter Lumpkin, D.O. [Doc. 29 p. 2]. Dr. Lumpkin noted a history of retinal detachment, confirmed that plaintiff's left retina had detached, and recommended that he be referred to a retinal specialist [*Id.* at. 2-4]. Following his appointment with Dr. Lumpkin, plaintiff was transported back to Northeast, where he was offered infirmary observation until his appointment with a retinal specialist could be secured [*Id.* at 5]. Plaintiff refused [*Id.*].

On May 1, 2013, plaintiff was sent to the Tennessee Department of Correction's special needs facility in Nashville, Tennessee [Doc. 1 p. 4]. The next day, he was transported to Nashville General Hospital at Meharry ("Meharry") for treatment with a retinal specialist [*Id.*; Doc. 29 p. 6]. There, the retinal specialist examined plaintiff's left eye and concluded that surgery was not warranted due to plaintiff's long-standing history of retinal detachment and the poor likelihood of restoring his vision [Doc. 1 p. 4; Doc. 29 p. 6]. The retinal specialist also discovered "an atrophic hole" near the retina of plaintiff's right eye [*Id.* at 6]. In a preliminary report, the specialist explains that "[g]iven [plaintiff's] history of retinal detachment in the left eye . . . [she] recommended laser treatment of the right eye, which was performed today to surround the retinal hole" [*Id.*].

---

[2] While matters outside the pleadings are generally not considered when ruling on a Rule 12(b)(6) motion, the Court is permitted to consider certain pertinent documents as "'part of the pleadings'" when the documents are attached to the motion to dismiss, referred to in the plaintiff's complaint, and central to claim. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* Here, plaintiff references his medical records and grievances in the complaint [Doc. 1].

The preliminary report further stated that plaintiff "can follow up at the Nashville general eye clinic . . . again on 09/05/2013 at 9:00" [*Id.*]. This preliminary report was submitted to Northeast's medical unit, and a follow up appointment was scheduled [*Id.* at p. 7].

Shortly after his return to Northeast, plaintiff filed an inmate grievance in which he characterized the "requested solution" as being "'immediate' undelayed [sic] medical attention that has already been diagnosed by a physician needing surgery in my left eye" [Doc. 1-1 p. 1]. Similarly, he stated in the body of his grievance that "[he] filed this grievance hoping that reconsideration would be made concerning [his] 'left eye' that surgery would done to restore my sight in my left eye in which eye specialist gave diagnosis about [sic]" [Doc. 1-1 p. 3]. Defendant—the health administrator at Northeast and individual tasked with responding to the grievance—explained to plaintiff that she had reviewed his medical records, including the report from Meharry [Doc. 25-2]. Based on the medical providers' statements in those records, it was clear that "surgery is not warranted for the left eye" and that "Mr. Walker underwent laser surgery on his right eye on [May 17, 2013] for a retinal hole at Nashville General Eye Clinic" [*Id.*]. A staff physician with Northeast reviewed the patient's record and agreed that "surgery is not war[ra]nted on his left eye at this time" [*Id.*]

Consistent with the request made by the eye specialist at Meharry, the Tennessee Department of Corrections (TDOC) arranged for plaintiff to be sent back to the special needs facility in Nashville for a follow-up appointment "regarding laser eye surgery" [Doc. 29 p. 7]. On August 30, 2013, however, plaintiff refused a transfer for further

treatment [*Id.*]. Meanwhile, plaintiff's grievance continued through the appeals channels in accordance with TDOC's policies and was subsequently denied by the Deputy Commissioner of Operations on or about July 25, 2013. Plaintiff later filed suit on July 7, 2014, alleging that he had been denied laser treatment on the "retina[l] hole" in his "right eye" [Doc. 1 pp. 4-5]; plaintiff makes no mention of his left eye in the § 1983 action [*Id.*].

On March 10, 2015, it was discovered that despite what was written in the Plaintiff's medical record at Meharry, he did not receive laser treatment on his right eye on May 17, 2013 [*Compare* Doc. 29 at 6, *with* Doc. 29 at 8]. Instead, an amended record from Meharry revealed that plaintiff was to return in one month for laser treatment [*Id.*]. Upon learning of the discrepancy, another appointment was arranged [*Id.* at 9]. On May 7, 2015, the Plaintiff was transferred to Meharry's eye clinic—where he received treatment from Talmage Broadbent, M.D. [*Id.* at 10-14]. In this visit, plaintiff reported to Dr. Broadbent that "at one point, he was told he needed some laser done in the right eye. But he states that though his medical record indicates that he had that procedure done, that he has not had any laser in that eye" [Doc. 29 p. 10]. Although Dr. Broadbent's evaluation of plaintiff's right eye confirmed the presence of an atrophic retinal hole, he recommended close observation and a follow-up appointment [Doc. 29 p. 11]. He did not recommend surgery.

Plaintiff filed the current § 1983 action in the United States District Court for the Middle District of Tennessee on July 7, 2014, asserting an Eighth Amendment deliberate

4

indifference claim against defendant in both her individual and official capacities based upon the medical treatment that he received as an inmate at Northeast [Doc. 1].[3] He seeks compensatory damages for the alleged injuries in the amount of $750,000 [*Id.*]. Defendant now moves the Court to dismiss the complaint against her for failure to exhaust administrative remedies or state a claim [Doc. 24].

## II. STANDARD

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal standard, S*mith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," neither will "'naked assertion[s]' devoid of 'further factual enhancement[,]'" nor "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

When faced with a Rule 12(b)(6) motion, courts must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all

---

[3] Plaintiff also named several other persons as defendants in both their individual and official capacities. Those claims were dismissed, however, during the Middle District's mandatory review under the Prison Litigation Reform Act, 42 U.S.C. § 1997e [Doc. 4]. The claim against defendant in her official capacity was also dismissed [*Id.*].

5

reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

*Pro se* litigants "are held to less stringent [pleading] standards than . . . lawyers in the sense that a *pro se* complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); s*ee also Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet, this Court's "lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "Neither [this] Court nor other courts . . . have been willing to abrogate basic pleading essentials in *pro se* suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). For instance, federal pleading standards do not permit *pro se* litigants to proceed on pleadings that are not readily comprehensible. *Cf. Becker v. Ohio State Legal Servs. Ass'n*, 19 F. App'x 321, 322 (6th Cir. 2001) (upholding a dismissal of a *pro se* complaint containing "vague and conclusory allegations unsupported by material facts.").

III. ANALYSIS

Defendant asserts two theories in favor of dismissal: failure to exhaust administrative remedies; and failure to state a claim for relief. Because the Court agrees that plaintiff is barred from litigating the instant action based on his failure to exhaust administrative remedies with respect to the specific claim raised, it need not address whether or not he has successfully stated a claim. The Court alternatively interprets the absence of a response in opposition to defendant's Motion to Dismiss as a waiver of objection to the same and dismisses the instant § 1983 action on that basis.

A. **Failure to Exhaust**

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under [§] 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted," *id*. This exhaustion requirement is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). That means the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id*. at 88. In addition, a prisoner must exhaust the grievance process to all levels of appeal before filing his complaint. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Failure to follow the correctional facility's grievance procedures, i.e., exhaust administrative remedies, is fatal. *See Williams v. Moore*, 34 F. App'x 475, 477 (6th Cir. May 7, 2002); *Black v. Tarver*, 21 F. App'x 285, 286 (6th Cir. August 9, 2001).

Defendant raises failure to exhaust as an affirmative defense. Specifically, she notes that plaintiff's complaint alleges deliberate indifference to the serious risk posed by the "retina hole" in plaintiff's "right eye," but that the administrative grievance filed with TCIC and TDOC only requests medical attention for "'blind[ness]' in [plaintiff's] left eye" [Doc. 25]. Defendant urges the Court to hold that plaintiff failed to exhaust administrative remedies for the claim in his complaint—failure to treat the "retina hole" in his right eye—when he failed to include the need for that care in a prison grievance [*Id.*].

Upon review, the Court agrees. Requesting additional medical treatment based on blindness in his left eye did not obviate plaintiff's obligation under the PLRA to fully avail himself of those same administrative procedures with regard to the "retinal hole" in his right eye. Stated more generally, exhausting administrative procedures for one issue does not obviate the obligation to do the same with respect to similar but separate issues. *Accord Ellis v. Vadlamudi*, 568 F. Supp. 2d 778, 790–91 (E.D. Mich. July 10, 2008) (requiring exhaustion in the context of an Eight Amendment deliberate indifference claim). Because plaintiff failed to submit an administrative grievance requesting the treatment he claims to have been denied in the § 1983 complaint, that action is subject to dismissal.

### B. Failure to Respond in Opposition to Dismissal

As an alternative basis for dismissal, the Court notes that it may properly dismiss a case for want of prosecution. *See, e.g.*, *Custom v. Detroit Edison Co.*, 789 F.2d 377, 379

(6th Cir. 1986); Fed. R. Civ. P. 41(b). Failure to respond or otherwise oppose a motion to dismiss operates as both a waiver of opposition to and an independent basis for granting the unopposed motion. *See, e.g.*, *Notredan, LLC v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013); *see also* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought").

More than eleven months have passed since defendants filed the instant Motion to Dismiss on March 11, 2016 [Doc. 24]. Plaintiff has yet to respond and, by way of such failure, is found to have waived opposition to dismissal of the complaint. *Ellison v. Knox Cty.*, No. 3:15-cv-126, 2016 WL 204472, at *13–14 (E.D. Tenn. Jan. 15, 2016); *Elmore v. Evans*, 449 F. Supp. 2, 3 (E.D. Tenn. 1976). As a result, the action will be dismissed.

## V. Conclusion

For these reasons, the Motion to Dismiss [Doc. 24] will be **GRANTED** and this case will be **DISMISSED**. The Clerk of Court will be **DIRECTED** to **CLOSE** the case.

**AN APPROPRIATE ORDER WILL ENTER.**

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
